# EDWARD E. CRAIG, Appellant, *v.* WILLIAM HARRAH, Respondent.

No. 3541

January 17, 1949.                    201 P.24 1081.

2

*Edward E. Craig,* of Berkeley, Cal., in pro per.

*Harlan L. Heward,* of Reno, for Respondent.

## OPINION

By the Court, HORSEY, C. J.:

This case is before us upon appeal from the judgment rendered and entered by the Second judicial district court of the State of Nevada, in and for the county of Washoe, department No. 1, on the 16th day of January 1948, in favor of the plaintiff, who is the respondent in the matter of this appeal. There was no motion for a new trial.

This court has heretofore disposed of two motions in the case, by our opinion and orders filed June 25, 1948, whereby we denied appellant's motion for an extension of time within which to file bill of exceptions, and

granted respondent's motion to strike appellant's bill of exceptions, certain minutes of the court, and the district court's opinion and decision. The motion of appellant for an extension of such time was denied, for the reason that appellant's application was made to this court long after the time within which to file bill of exceptions had expired, and he had made no application for such extension to the lower court or the judge thereof, nor had he requested a stipulation from opposing counsel for any extension of such time, until after the time had expired.

The motion of respondent to strike the bill of exceptions was granted, for the reason that this court has repeatedly held that the time requirement of our statute in that regard is mandatory and jurisdictional. The minutes of the district court, and that court's opinion and decision, were, necessarily, ordered stricken for the reason that they constituted no part of the judgment roll and could only be brought properly before this court if embodied in a bill of exceptions filed within the time allowed by law. Numerous authorities are cited in our said opinion, in support of our position stated therein, and the orders simultaneously made. Said opinion and orders are reported in 65 Nev. 295, 195 P.2d 688, to which reference is now made.

Appellant's bill of exceptions having been stricken, the case is now before us upon appeal upon the judgment roll alone, and it is only to the documents and papers constituting the judgment roll that we are entitled to look for the correctness of the lower court's rulings, decision and judgment. The judgment roll before us consists of the pleadings (the complaint, answer and reply), the district court's findings, and that court's judgment.

We shall refer to the parties as plaintiff and defendant, respectively, as they were designated in the lower court.

The plaintiff, in his complaint, alleged that defendant became indebted to plaintiff in the sum of $500, for

money had and received by defendant by reason of an advancement made of said sum of money, on or about May 25, 1947, to the defendant by the plaintiff. The plaintiff also alleged that he demanded payment thereof from the defendant, on May 31, 1947, and that no part of said sum of $500 had been repaid.

The defendant, in his answer, alleged, in substance, that no sufficient demand had been made on him by plaintiff for the repayment of said sum of $500, admitted that he, said defendant, had not repaid said sum or any part thereof, and further alleged "that there was no obligation on the part of the defendant to repay said sum of $500.00." In paragraph I of his answer, the defendant set forth his principal defense, which defense is, in effect, that the $500 sued for by plaintiff was advanced to defendant by plaintiff for the purpose of engaging in gambling in plaintiff's gambling establishment or casino in the city of Reno, Nevada, an illegal purpose; that such purpose was well known to the plaintiff at the time said advancement was made, and that any debt or obligation arising from such advancement or upon the basis thereof was a gambling debt or obligation, unenforceable under the laws of the State of Nevada. The allegations in said paragraph I of defendant's answer as to such illegal purpose, and of facts tending to disclose same, are as follows:

"and further alleges that said $500.00 was advanced by the plaintiff to the defendant for the purpose of engaging in gambling, and that at the time of said advancement of said $500.00 the plaintiff well knew that the said advancement of the said sum of $500.00 was for the purpose of engaging in gambling.

"That the plaintiff is the owner, proprietor and operator of a gambling casino in the City of Reno, County of Washoe, State of Nevada. That the principal business and the sole business of the plaintiff in the operation of said casino, is to run gambling devices and games and to sell liquor, and that at the time said advancement

was made the plaintiff then and there in said casino managed, operated and controlled certain gambling devices and games known and designated as 'craps', or dice game, roulette, black jack and mechanical slot machines and that each, every bit and all of the said $500.00 advances by the plaintiff to the defendant as aforesaid were advances for the sole purpose of enabling the defendant to use said money for the purpose of gambling in the plaintiff's casino in the following games to wit: black jack, roulette, craps, as aforesaid, and slot machines, as aforesaid, and that the defendant took no part of said money away from said gambling establishment and gambled each, every bit and all of the same in said gambling establishment, as aforesaid, with the knowledge and participation of the defendant in each and every bit of said gambling and that the plaintiff won from the defendant by his gambling devices as aforesaid each, every bit and all of the aforesaid advancement of said $500.00."

Plaintiff, in paragraph I of his reply to said answer, denied all of said paragraph I thereof, and each and every allegation therein contained, including the portion of said paragraph I above quoted, "save and except that the plaintiff admits that he is the owner and proprietor of Harrah's Club, located in Reno, Nevada and that at the time the plaintiff gave to the defendant the said $500, he in Harrah's Club managed, operated and controlled certain gambling devices known and designated as 'craps', or dice game, roulette, black jack and mechanical slot machines."

It may be noted at this point that the defendant, neither in said paragraph I nor elsewhere in his answer, has alleged expressly or specifically *where* the advancement to him by plaintiff of the $500 was made, nor whether same was advanced personally by the plaintiff, or by some agent, cashier or employee of plaintiff, nor whether at the time of the advancement the defendant was then and there engaged in playing a game or betting

at any gambling game or device, or had, shortly prior thereto, been so engaged.

In determining the purpose for which the $500 was advanced, the significance and relevancy of the surrounding circumstances and environment are readily apparent. If the advancement was made in a gambling establishment in full operation, by the proprietor or his agent, to one then, or immediately prior thereto, engaged in gambling and who ran short of money, the game still being in progress, or if his conversation or the circumstances indicated he intended to resume playing, the purpose of the advancement becomes clear. On the other hand, if the advancement was at a different place. than a gambling establishment, or if same was not made at a time when the recipient had been recently playing, and some other, legitimate, purpose is stated by the recipient, then no presumption or inference that the advancement was for a gambling purpose is justifiable from such circumstances.

Confined, as we are upon this appeal, to the judgment roll, the bill of exceptions containing all the evidence having been stricken, and bound, as we are, to presume conclusively that the findings of the trial court are correct, and, in the instant case, the trial court having found to be untrue all of the allegations of paragraphs I, II, and III of defendant's answer, save and except the clause above quoted from said paragraph I of the reply and which is substantially the same as a like clause in paragraph I of said answer, it is important that we carefully consider and interpret correctly such admitted clause.

The fact that the plaintiff was "the owner and proprietor of Harrah's Club located in Reno, Nevada and that at the time the plaintiff gave to the defendant the said $500, he in Harrah's Club managed, operated and controlled certain gambling devices" is not, necessarily a statement that the advancement was made to the defendant *in Harrah's Club*. As is commonly known

to be the custom and practice, the proprietor of such a club may also be, at the same time, the manager, operator and controller of such establishment, but, in order to perform his duties efficiently, he may, and usually does, employ assistants, agents or employees. In fact, if the establishment and business is of considerable size and volume, he employs many such assistants. It cannot be reasonably contended that,· because the rather peculiar phraseology, "he *in* Harrah's Club managed," etc. (italics added) was used, that such expression necessarily meant that the plaintiff was physically present *in such club* at all times when he was so engaged in its management, operation, and control. In clubs of such kind, many of which operate continuously, this would be a physical impossibility. The plaintiff, at the time the advancement of the $500 was made to the defendant, would, in legal contemplation and effect, if the language be given a reasonable construction, be deemed to be *in such club* and engaged in its management, operation, and control to the same extent, if it happened that he was physically absent, for instance, at some hotel or cafe, dining, or engaged elsewhere, and at such time functioning through his authorized assistants, agents, and employees, as he would be if physically present in such club at such particular time. It follows, therefore, that if he personally and physically made the advancement to defendant, he may have done so at some hotel or cafe, or on the street, or at some other place away from his gambling casino.

The defendant insists, in his reply brief, that there was no personal relationship between plaintiff and himself which would cause plaintiff to make such advancement for other than business reasons. This may be true, but we cannot, in view of the findings of the trial court, and in the absence of all evidence from the record, read into the defendant's answer and, particularly, into the admitted clause thereof, allegations of facts which are not therein alleged. Even assuming, however, that by

such admitted clause defendant intended to allege, and plaintiff, in his reply, to admit, that at the precise time the $500 was advanced to defendant the plaintiff was physically present in the club, then and there personally engaged in its management, operation, and control, and that he then and there personally and physically advanced to defendant, also personally present therein at said time, the $500, such assumed facts would not, necessarily, lead to the conclusion that the advancement was for a gambling purpose. Indeed, the parties, for aught that appears from the admitted allegations, may have been personal friends and acquaintances—the defendant may have been desirous of making a trip, or using the money for some other purpose than gambling, and may have gone into the gambling casino, at the time alleged, and requested that the plaintiff cash a check for him for $500. The plaintiff may also have done so, and the defendant may have departed immediately thereafter, without any thought or intent on the part of either of them that the money was to be used for a gambling purpose, and insofar as such admitted facts are concerned, and entirely consistent therewith, the defendant may not have used any of such money for a gambling purpose, but entirely for other purposes.

As has been hereinbefore stated, the honorable trial judge found all the facts alleged in said paragraph I of defendant's answer to be untrue, save and except the facts admitted by the clause above quoted and considered. The facts thus found to be untrue include the allegation in said paragraph I of the answer "that said $500.00 was advanced by the plaintiff to the defendant for the purpose of engaging in gambling, and that at the time of said advancement of said $500.00 the plaintiff well knew that the said advancement of the said sum of $500.00 was for the purpose of engaging in gambling." In the absence of all evidence from the record, such finding must be conclusively presumed by us to have been established by a preponderance of the evi-

dence, or, at least, by substantial evidence. Such finding of the trial court to the effect that the allegation of the defendant "that said $500.00 was advanced by the plaintiff to the defendant for the purpose of engaging in gambling" was untrue, not only, in effect, negatived the existence of any express purpose to use the money advanced to engage in gambling, but, also, must be deemed to negative the existence of any evidence admitted at the trial sufficient to prove circumstances and environment surrounding the parties at the time of such advancement, and from which the presence of a gambling purpose would be imputed or implied, as, for instance, that the advancement was made when the defendant was engaged in playing or betting in plaintiff's gambling establishment, and that the play was still in progress.

The law as to this phase of the subject is clearly and ably presented and applied in an opinion of this court, by Mr. Justice SWEENEY, in the case of Burke & Co. v. Buck, 31 Nev. 74, 99 P. 1078, 22 L.R.A., N.S., 627, 21 Ann.Cas. 625. In the opinion, after quoting extensively from the English statute of 9 Anne c. 14, 4 Bac. Abr. p. 456, such statute having been consistenly held by the decisions of this court to have been adopted into the law of Nevada, Mr. Justice SWEENEY stated, as reported on page 81 of 31 Nev. and on page 1081 of 99 P.:

"The statute making void a transfer of a negotiable instrument at the time and place of such play, to any person so gaming, or during such play, and the facts of this case showing that the certificate of deposit in question was transferred during the progress of the play at such a time and place, no valid transfer of the certificate was effected, and hence the plaintiffs acquired no legal title thereto."

In his reply brief, the defendant, Mr. Craig, has very earnestly argued from the standpoint of the existence of evidence before the trial court establishing circumstances existent at the time the advancement was made,

from which the purpose of gambling would be implied, and which would, under the statute 9 Anne c. 14, render the obligation for repayment of the $500 advanced "utterly void, frustrate and of none effect, to all intents and purposes whatsoever." Being bereft, as we are, of all evidence in the record, due to the defendant not having filed his bill of exceptions within the time provided by law, and same having been stricken, we cannot assume the existence of such circumstances and environment, and imply the existence of a gambling purpose, which would be directly contrary to the finding of the learned trial judge that the defendant's allegation of such purpose was untrue. The effect of such holding of the trial court is that the debt to repay such $500 advanced not having been proven to the satisfaction of the trial court to have been incurred for the purpose of gambling, the defendant's affirmative defense that it was incurred for such purpose, the burden of proving such affirmative defense being upon defendant, necessarily failed for lack of proof:

The honorable trial judge found, further, to be untrue the allegations of paragraph II of defendant's answer, denying that plaintiff demanded payment of said $500, and alleging, in effect, that the language used by plaintiff's agent and servant over the telephone, in ostensibly making demand, was insufficient to constitute a demand; and, also, to be untrue the affirmative portion of paragraph III of defendant's answer, wherein defendant alleged "that there is no obligation on the part of the defendant to repay said sum of $500.00."

Other pertinent findings which the learned trial judge made are contained in paragraphs I and II of the findings of fact and conclusions of law, and are as follows:

"I.

"That the Court has jurisdiction over both of the parties to the action, and jurisdiction over the subject matter of the action; that the defendant was duly served

with process in this action on July 21, 1947, and thereafter filed his answer therein and personally appeared at the trial and personally participated therein.

"II.

"That on or about May 25, 1947, the defendant became indebted to the plaintiff in the sum of Five Hundred Dollars ($500.00) for money had and received by said defendant by reason of an advancement made of such sum of money to the defendant by the plaintiff; that on or about May 31, 1947, and before the commencement of this action, the plaintiff demanded payment, thereof from the defendant; that no part of said sum of Five Hundred Dollars ($500.00) has been repaid by the defendant to the plaintiff."

The facts thus found sufficiently support the judgment.

In the absence of all evidence from the record before us, we must presume conclusively that the findings of fact of the trial court are correct and free from error. This principle and rule of law is universally upheld and applied. In 3 Am.Jur., upon the subject "Appeal and Error," section 954, pages 516–518, the question now confronting us is clearly and ably treated. The pertinent portions of section 954 are as follows:

"When reviewing the judgment rendered in an equity case or in an action at law tried before the court without a jury, the appellate court will indulge in every reasonable presumption in favor of findings made by the lower court upon which it rendered judgment. As in other cases, the appellant has the burden of showing error therein. * * *

"The presumption is that the evidence was sufficient to support or sustain the findings made and to justify the conclusions reached, *especially where the record contains no statement of the evidence.* * * *" (Emphasis supplied.)

In support of the statement of law last above quoted,

the following cases are cited: Canal Bank v. Hudson, 111 U.S. 66, 4 S.Ct. 303, 28 L.Ed. 354; Federal Surety Co. v. A. Bentley & Sons Co., 6 Cir., 51 F.2d 24, 78 A.L.R. 1041; Genard v. Hosmer, 285 Mass. 259, 189 N.E. 46, 91 A.L.R. 543; Sandall v. Sandall, 7 Utah 150, 193 P. 1093, 15 A.L.R. 620.

In Canal Bank v. Hudson, supra, the Supreme Court of the United States, in the opinion by Mr. Justice Blatchford, stated [111 U.S. 66, 4 S.Ct. 311]:

"The circuit court, it is clear, found in this case that the appellees acquired their alleged title in good faith, under the rule thus established. *The evidence is not in the record, and must be regarded as sufficient to support such finding."* (Emphasis added.)

In Parks et al. v. Garrison, 57 Nev. 480, 67 P.2d 314, Mr. Chief Justice COLEMAN, in his opinion, applied such principle. On page 482 of 57 Nev., and page 314 of 67 P.2d it is stated:

"An order having been made, on stipulation of the parties, striking the bill of exceptions, *there is nothing the court can consider except the judgment roll."* (Emphasis added.)

And on page 484 of 57 Nev., page 315 of 67 P.2d Mr. Chief Justice COLEMAN stated, further:

"The evidence not being before us, *we must conclusively presume* that it shows that all of the parties were at that time endeavoring to terminate the contract in toto, and considered that they had done so, and in fact succeeded in so terminating it." (Emphasis added.)

The effect of the trial court's finding, in the instant case, being that the obligation of defendant to repay the sum of $500 so advanced to him by plaintiff was a legitimate, binding obligation, and *not a debt incurred for the purpose of gambling,* and it being clearly obvious, in the absence of all evidence from the record, that we must affirm the judgment of the trial court, the legal question of the unenforceability, under the law of Nevada, of a gambling debt or obligation is not before

us at this time for determination. In this case, in view of the legal situation existing, such question is merely a moot question. The defendant, in his reply brief, has ably discussed and presented the law of this and other states relative to gambling obligations, but, for the reason above stated, the question being moot insofar as this case is concerned, we cannot properly determine or decide herein such question, which is entirely a question of law, and inapplicable to any facts found by the trial court in the instant case.

No error appearing in the judgment roll, and same being the sole record before us, which we have the right to consider, the judgment of the district court is hereby affirmed.

BADT and EATHER, JJ., concur.