507 A.2d 1226

**NATIONAL RECOVERY SYSTEMS, Appellant**

v.

**Warren BRYER.**

Superior Court of Pennsylvania.

Argued Oct. 29, 1985.

Filed March 24, 1986.

Reargument Denied May 2, 1986.

Melvin Rubin, Ardmore, for appellant.

Jerome Gamburg, Philadelphia, for appellee.

Before WICKERSHAM, BECK and HOFFMAN, JJ.

WICKERSHAM, Judge:

National Recovery Systems (NRS) appeals from the order of the court below in which its claim, as assignee,[1] for money lent to appellee Warren Bryer by a Nevada casino was found to be unenforceable.

The pertinent facts are as follows: In July, 1975 appellee applied for credit from the Frontier Hotel, Las Vegas in order to make a "gambling junket"[2] to that casino at a later date. A credit line of $5,000.00 was duly extended to appellee. Appellant subsequently travelled to Nevada in November 1977, and as a guest at the Frontier Hotel, used his $5,000.00 line of credit for gambling there. Upon appellee's refusal to repay the "loan" made by the casino, appellant sought recovery of the debt.

1. Appellant, NRS, was assigned a claim for $5,000 against appellee by The Frontier Hotel, Las Vegas, Nevada. Appellant acts as a consultant to gambling casinos, including the Frontier Hotel, in which capacity it, among other things, sets up procedures for gaming, casino credit and debt collection.

2. A "gambling junket" is the common expression for travelling to casinos with a group of people for the purpose of gambling, according to the testimony.

Following a non-jury trial, the lower court made findings of fact, conclusions of law, and entered a verdict for appellant in the amount of $5,000.00. Appellee filed exceptions to the court's findings of facts, which were sustained and the previous verdict was reversed, with judgment entered for appellee on March 11, 1985.

The instant appeal followed, in which appellant raises two issues for our review.[3] One of these issues is whether Nevada law applies under the Pennsylvania conflict of law rules. This "issue" being previously resolved correctly by the trial court in the affirmative, we do not find it deserving of our further attention.

■ We turn to appellant's remaining issue, regarding the recoverability of the "loan" as money not lent solely for gambling purposes. We begin by noting that "[a]lthough the state of Nevada has legalized gambling, the Nevada Supreme Court has consistently held that debts incurred, and checks drawn for gambling purposes, are unenforceable." *National Recovery Systems v. Ornstein,* 541 F.Supp. 1131, 1133 (E.D.Pa.1982). While the burden of proving a gambling purpose is on the party seeking to avoid liability, there is a presumption of gambling purpose where the transaction occurs in proximity to the gambling itself in terms of both time and space. *Flamingo Resort, Inc. v. United States,* 485 F.Supp. 926, 931 (D.Nev.1980), *aff'd,* 664 F.2d 1387 (9th Cir.1982). The test to be used in determining whether this presumption arises was set out by the Supreme Court of Nevada in *Craig v. Harrah,* 66 Nev. 1, 201 P.2d 1081 (1949) as follows:

**3.** Appellant states the relevant issues to be as follows:

    I. When a loan is made on the basis of a credit application submitted long in advance, no restrictions are placed on the use of the proceeds; and cash is given to the borrower at a place other than the gambling tables, does the fact that the borrower used part of the proceeds, over a period of three days, to gamble, render the debt unenforceable in Nevada?

    II. Is Nevada law applicable under the Pennsylvania conflict of laws rules?

Brief for Appellant at 3.

In determining the purpose [behind the indebtedness], the significance and relevancy of the surrounding circumstances and environment are readily apparent. If the advancement was made in a gambling establishment in full operation, by the proprietor or his agent, to one then, or immediately prior thereto, engaged in gambling and who ran short of money, the game still being in progress, or if his conversation or the circumstances indicated he intended to resume playing, the purpose of the advancement become clear. On the other hand, if the advancement was at a different place than a gambling establishment, or if same was not made at a time when the recipient had been recently playing, and some other, legitimate, purpose is stated by the recipient, then no presumption or inference that the advancement was for a gambling purpose is justifiable from such circumstances.

*Id.* at 6, 201 P.2d at 1084.

This test was recently applied by the Eastern District Court of Pennsylvania in *National Recovery Systems v. Ornstein, supra,* where the facts were strikingly similar to those of the instant case. In *National Recovery Systems v. Ornstein,* the defendant, like appellant herein, obtained credit lines from Las Vegas casinos in anticipation of planned gambling junkets. *Id.* at 1132. Travelling to Nevada, he later drew upon those lines of credit, using the money for gambling in the casinos which had advanced him credit. *Id.* Advances were made in the form of chips, in proximity to gambling activities, and in exchange for all sums received, the defendant executed counter-checks or markers in the amount of the advance. *Id.* When he failed to repay the money thus borrowed, claims were assigned to National Recovery Systems for collection. *Id.* at 1132. The court found that based on these circumstances, the loans had been made for gambling purposes under the *Craig v. Harrah* test. *Id.* at 1134.

■ Applying that test to the instant case, it is obvious that here too, advancements were made for gambling purposes and are thus unenforceable under the law. As the

lower court ultimately concluded, evidence adduced at trial amply supported this proposition. *See* lower ct. op., May, 1985 at 5. The testimony showed that appellee drew on his previously established line of credit, while in the process of gambling and used all but a couple of hundred dollars in actual gambling. N.T., 58–60. Moreover, appellee was never more than a few yards away from gambling activities when he drew on his credit line by signing markers at the cashier's cage and even at the gambling table. N.T. 58. These facts indicate that the "loans" made by the casino were sufficiently proximate in time and place to appellee's gambling as to be presumed for "gambling purposes" under the *Craig v. Harrah* test. The trial court thus correctly found appellant's claim was unenforceable.

Accordingly, the order of the lower court is affirmed.