NATIONAL RECOVERY SYSTEMS, PLAINTIFF, v. STANLEY FELTMAN, DEFENDANT.

Superior Court of New Jersey
Law Division Morris County

Decided April 25, 1986.

No appearance for plaintiff (*Stanley W. Low* on the brief).[1]

*Mary Hammer* for defendant (*Meth, Nagel, Rice, Woehling & Bausch,* attorneys; and *Randee M. Matloff* on the brief).

[1]Counsel for defendant was present for oral argument. Plaintiff's attorney was not in court. A call to his office produced a reply that counsel did not believe oral argument would be held. While neither attorney had expressly requested oral argument, neither had explicitly waived his/her right to be heard. Mindful of the well-publicized notice of the Chief Justice to trial bench and bar, the court directed counsel to make her argument in the absence of her adversary. Published in the New Jersey Law Journal of February 27, March 6 and March 13, 1986 was the following notice:

> Motions filed pursuant to *R.* 1:6–2(d), that is, all non-discovery and non-calendar motions in civil cases neither filed in Chancery nor specially assigned, are presumed to be submitted for oral argument. The moving party, however, may waive oral argument by including an explicit statement in the motion papers that he or she **waives oral argument and consents to a disposition on the papers.** Statements such as "counsel will rely on the affidavits and papers submitted" are ambiguous and leave the court and opposing counsel confused as to whether oral argument is waived. Attorneys are reminded that, in the event oral argument is waived, this should be specifically stated in accordance with the language of *R.* 1:6–2(d).
>
> Robert N. Wilentz
> Chief Justice

MACKENZIE, J.S.C.

This action was brought by an assignee to recover on defendant's indebtedness to the MGM Grand Hotel, a gambling casino located in Las Vegas, Nevada. The principal question in this case is whether the New Jersey policy allowing enforcement of certain gambling debts contracted elsewhere controls the facts of this case. In a legalized and appropriately supervised form, gambling is not contrary to this State's public policy. *Caribe Hilton Hotel v. Toland*, 63 *N.J.* 301 (1973). A gambling debt may be enforced here if it was validly contracted in another jurisdiction and is enforceable there. *Ibid.* But what if such debts are not enforceable in the foreign jurisdiction even though gambling is legalized and supervised there?

Cross-motions for summary judgment were before the court on a scheduled motion day. The underlying facts were undisputed which made the case ripe for disposition on the law.[2] They may be stated briefly. In the late summer of 1980, defendant received an invitation from the MGM Grand Hotel to enjoy the Labor Day weekend as a guest at the hotel, free of any charge for room and board. He was informed that a $15,000 credit line would be available to him at the hotel. Defendant was only required to buy a round-trip airline ticket to Las Vegas. Defendant accepted the offer. Upon his arrival, a representative of the hotel reimbursed his airfare in gambling chips.

During the course of the extended weekend, defendant gambled at the casino in the hotel. Although promised a line of credit, he was required to sign blank documents, which are similar in form to checks and are known as "markers," in order to receive gambling chips. Those markers did not, however, indicate either the payee or the date, nor were they drawn on a

---

[2]Counsel for plaintiff submitted a certification which was incompetent because it contained only hearsay, speculation and conclusions. *See R.* 1:6–6. That certification has been completely disregarded in deciding this motion.

particular bank or account. A representative of the hotel merely wrote in a dollar amount on the marker and gave it to defendant for his signature whenever he needed money to gamble. Upon signing the marker, defendant received gambling chips of a value equal to the amount shown on the marker. In each instance, the marker transaction took place in the casino of the MGM Grand.

As promised, the hotel charged Feltman nothing for his food, room and drinks. Markers totalling $10,000 were left unpaid when he returned to New Jersey. Two months later, in November 1980, the markers, now filled in as to date, payee and collecting bank, were presented to a branch of the United Jersey Bank in which defendant had a corporate account.[3]

Defendant does not argue that he has repaid the $10,000; he concedes the sum is unpaid. Nor does he contend that the MGM Grand Hotel is not sanctioned, licensed and regulated by the State of Nevada; he concedes for the purpose of this motion that the hotel operates a lawful gambling business. His argument is that gambling debts contracted in Nevada are unenforceable there, and should be unenforceable here. The court agrees.

In determining the enforceability of gambling debts incurred outside the State of New Jersey, *Caribe Hilton Hotel v. Toland, supra,* is the controlling authority. In that case, a casino located in San Juan, Puerto Rico, brought suit in New Jersey against a New Jersey resident to recover a debt which defendant admittedly contracted in plaintiff's gambling rooms. In determining the enforceability in New Jersey of such a debt, the Supreme Court instructed that the choice of law should be that of the jurisdiction where the contract was made or the jurisdiction having the most significant relationship to the par-

---

[3]Defendant was authorized to sign checks on this account. When presented to the bank, the markers, now seemingly negotiable instruments, were returned for insufficient funds. This action followed.

ties. *Id.*, 63 *N.J.* at 303. *See also, Restatement, Conflict of Laws* 2d, § 188 at 575 (1971); *State Farm Mutual v. Simmons Estate,* 84 *N.J.* 28, 34 (1980); *Winer Motors, Inc. v. Jaguar Rover Triumph, Inc.,* 208 *N.J.Super.* 666 (App.Div.1986).

■ By either test, the substantive law of Nevada must be selected for application in this case. The contract between the parties, as evidenced by the markers, was made in Nevada. The parties were physically present there at the time of the transactions. The debt arose there. Defendant made a pretense of satisfying his obligation to the hotel by delivering the markers in the casino. The gambling was done only in Nevada. He was in Nevada because of the express invitation of the hotel. On the other hand, defendant is, and was, a resident of New Jersey. As the Supreme Court determined in the *Caribe Hilton Hotel* opinion, this single fact is insufficient to require use of New Jersey law.[4] The court concludes that the law of Nevada must be applied.

Although Nevada has legalized casino gambling, the Supreme Court of that state has invariably held that gambling debts are not enforceable there. As was stated in *Sea Air Support, Inc. v. Herrmann,* 96 *Nev.* 574, 613 *P.*2d 413 (1980):

> Despite the fact that gambling, where licensed, is legal in Nevada, the Court has long held that debts incurred, and checks drawn, for gambling purposes are void and unenforceable. *Corbin v. O'Keefe,* 87 *Nev.* 189, 484 *P.*2d 565 (1971); *Wolpert v. Knight,* 74 *Nev.* 322, 330 *P.*2d 1023 (1958); *Weisbrod v. Fremont Hotel,* 74 *Nev.* 227, 326 *P.*2d 1104 (1958); [613 *P.*2d at 414, other citations omitted].

*See also National Recovery Systems v. Ornstein,* 541 *F.Supp.* 1131 (E.D.Pa.1982); *Sandler v. Eighth Jud. Dist. Ct., Etc.,* 96 *Nev.* 622, 614 *P.*2d 10, 11 (Sup.Ct.1980).

---

4Gambling was illegal in New Jersey at the time of the *Caribe Hilton Hotel* opinion, except for certain amusement games (*N.J.S.A.* 5:8–100 *et seq.* and 5:8–121 *et seq.*); pari-mutuel horse racing (*N.J.S.A.* 5:5–69 through –71) and charity bingo games and raffles (*N.J.S.A.* 5:8–6 through –12). There was no casino gambling here at that time. Additional forms of gambling have since been legalized, *e.g.,* the state lottery (*N.J.S.A.* 5:9–1 *et seq.*) and casino gambling in Atlantic City (*N.J.S.A.* 5:12–1 *et seq.*).

The Nevada rule, however, requires consideration of all the surrounding circumstances in order to determine whether money, credit or anything of comparable value was advanced for the purpose of gambling, and not for some legitimate purpose. *See, e.g., Wolpert v. Knight, supra; Flamingo Resort, Inc. v. United States,* 485 *F.Supp.* 926 (D.Nev.1980), *aff'd* 664 *F.*2d 1387 (9 Cir.1982), *cert.* den. *sub nom. Hilton Hotels Corp. v. United States,* 459 *U.S.* 1036, 103 *S.Ct.* 446, 74 *L.Ed.*2d 602 (1982). The principle may be stated as:

[I]f the advancement was at a different place than a gambling establishment, or if same was not made at a time when the recipient had been recently playing, and some other, legitimate, purpose is stated by the recipient, then no presumption or inference that the advancement was for a gambling purpose is justifiable from such circumstances. [*National Recovery Systems v. Ornstein,* 541 *F.Supp.* at 1134, citing *Craig v. Harrah,* 66 *Nev.* 1, 6, 201 *P.*2d 1081, 1084 (Sup.Ct.1949).]

The burden, under Nevada law, of proving a gambling purpose is on the party seeking to avoid liability. However, "[t]here is a presumption of gambling purpose where the transaction occurs in proximity to the gambling itself in terms of time and space." *National Recovery Systems v. Ornstein, supra,* 541 *F.Supp.* at 1134; *Flamingo Resort, Inc. v. United States, supra,* 485 *F.Supp.* at 931.

The facts in *National Recovery Systems v. Ornstein, supra,* bear striking resemblance to the facts in the instant case and demonstrate the applicability of the presumption of gambling purposes. In that case, Ornstein submitted a credit application and received a $10,000 line of credit at two Las Vegas casinos. He traveled to Nevada on "gambling junkets" and drew upon these lines of credit. The money was advanced in the form of chips. In exchange for the money received, Ornstein executed "markers" or counter-checks in the amount of each advance. The casinos assigned the debts to National Recovery Systems which sued when the counter-checks were returned for insufficient funds. In finding that the evidence created a presumption that the advancement was for a gambling purpose, the trial court stated:

[T]he Court finds that the loans were made for gambling purposes. Ornstein had received advances from both the MGM Grand and Caesar's on numerous occasions, which funds he used for gambling at their casinos. The daily nature of the advances to Mr. Ornstein during his visits to Caesar's and the MGM Grand, his history of gambling and borrowing at their casinos, and the fact that the advances were made to him in the form of chips in proximity to the gambling activities, are facts which under the law of Nevada clearly supports the presumption that the loans were made for a gambling purpose. Since the Court has determined that the loans were made for a gambling purpose, the debts incurred and checks evidencing such debts are void and unenforceable. [541 *F.Supp.* at 1134]

That *Ornstein* was a bench trial, and this is a summary judgment motion does not, given the uncontroverted factual setting, diminish its analytical significance.

■ In the instant case, all of the competent evidence supports the presumption that Feltman's debts were incurred for a gambling purpose. It is undisputed that his trip was a gambling junket. His certification stated that he received gambling chips while he was actually in the casino in return for his "markers" and the advances were made on a daily basis. Feltman was obliged to sign each marker as he needed additional funds to continue playing at the table and he used the chips to gamble. The court concludes that Feltman's debt was exclusively used for gambling purposes. Given the choice of law principle, the debt is unenforceable in Nevada and, as such, it is also unenforceable in New Jersey. *Caribe Hilton Hotel v. Toland* does not require another conclusion.

Accordingly, defendant's motion for summary judgment dismissing the complaint is granted; plaintiff's motion is denied.